## CARDAY v. NEIDERMEIER.
### No. 14405.

Court of Appeal of Louisiana. Orleans.

Feb. 13, 1933.

Rehearing Denied Feb. 27, 1933.

John O. O'Connor, of New Orleans, for appellant.

Frank A. Miller and Solomon S. Goldman, both of New Orleans, for appellee.

WESTERFIELD, Judge.

Plaintiff alleges that on June 14, 1932, he entered into a verbal agreement to sell to defendant herein, Quincy Neidermeier, a retail grocery store previously conducted by him on the premises No. 4101 North Claiborne avenue; that he also agreed to lease the premises to Neidermeier at a monthly rental of $60; that he moved out and Neidermeier moved in the premises and undertook the operation of the business, collected the proceeds of all merchandise sold for a period of three days, when he declined to go on with his agreement to purchase the store and refused to pay the purchase price; that he (plaintiff) declined to permit Neidermeier to recede from his agreement or to remove his household effects from the leased premises until a settlement of their differences was arrived at; that thereupon Neidermeier agreed to pay $300 in order to be relieved of his obligation in the premises, and executed the following document signed by him and his wife:

"June 18, 1932

"I the undersigned do hereby agree to pay J. Carday $300.00 to release business at 4101 N. Claiborne St.

"[Signed]  Q. Neidermeier.
"[Signed]  Mrs. Q. Neidermeier."

That subsequent to the execution of the agreement it was repudiated, whereupon this suit was entered for $300.

Neidermeier answered admitting the agreement to purchase the grocery and to lease the premises, admitted his signature to the compromise agreement, but averred that the agreement was illegal, null, and void because without valid consideration, and, assuming the position of plaintiff in reconvention, alleged that Carday had misrepresented to him the trade which the grocery enjoyed, as well as the character of stock on hand which, instead of being fresh, was otherwise; that the sales were little more than one-half the amount represented as the daily average; that with reference to the agreement to pay $300, it was executed "solely and only for the purpose of quieting the said Carday and to calm the wife of your petitioner" ; that Carday made all sorts of threats "in a loud and belligerent tone of voice and causing the wife of your petitioner in reconvention to become extremely nervous and hysterical and your petitioner in reconvention finally consented to sign the agreement to pay three Hundred ($300.00) Dollars" ; that an expense of $31 was incurred for moving and $39.78 for purchases of merchandise in excess of receipts; and that $100 should be allowed for trouble and annoyance—for all of which he prays for judgment in reconvention.

Upon the filing of the answer of defendant, plaintiff moved and obtained judgment upon the face of the papers, awarding him $300

and dismissing defendant's reconventional demand. Defendant has appealed.

The following articles of the Civil Code are of interest here:

Art. 1850. "Consent to a contract is void, if it be produced by violence or threats, and the contract is invalid."

Art. 1851. "It is not every degree of violence or every kind of threats that will invalidate a contract; they must be such as would naturally operate on a person of ordinary firmness, and inspire a just fear of great injury to person, reputation or fortune. The age, sex, state of health, temper and disposition of the party, and other circumstances calculated to give greater or less effect to the violence or threats, must be taken into consideration."

Art. 1853. "Violence and threats are causes of nullity, not only where they are exercised on the contracting party, but also when the wife, the husband, the descendants or ascendants of the party are the object of them."

Art. 1881. "Engagements made through error, violence, fraud or menace, are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, fraud, violence or menace, or by the representatives of such parties."

In the case at bar the only charge concerning the threats relied upon to vitiate the agreement is that contained in article 14 of defendant's answer to the effect that Carday tried to create a disturbance by making "all sorts of threats in a loud and belligerent tone of voice and causing the wife of your petitioner in reconvention to become extremely nervous and hysterical."

In Couder v. Oteri, 34 La. Ann. 697, the court, in speaking of the character of threats which vitiates a contract, said:

"Believing that the degree of violence or the character of threats, which in law vitiates a contract, must be considered and weighed in reference to men of ordinary composure and nerve, and not in the scales of imaginative alarmists, and being thoroughly satisfied from the evidence that Couder was not actuated in executing this contract, by any fear of bodily harm to himself, or much less to his family, we are constrained to differ with our learned brother of the District Court in the conclusion which he reached."

Bearing in mind the codal provisions and the authority which we have cited and scrutinizing the allegations of defendant's answer, we are of opinion that an insufficient showing has been made to constitute a valid defense and that the rule for judgment on the face of the papers was properly maintained, for it is obvious that there is no pretension that the defendant inspired "a just fear of great injury to person, reputation or fortune," nor any just fear of bodily harm to defendant or his wife as a consequence of the threats imputed to plaintiff. In fact, all that is said in regard to these alleged threats is that they were of all sorts and loud and belligerent in tone.

We are of the opinion that the judgment making the rule absolute was correct, and for the reasons assigned, it is affirmed.

Affirmed.